Good morning, Your Honor. May it please the Court, Mr. Wilkerson. Would you introduce yourself for the record? My name is Vivek Jayaram and I represent the appellant in this matter. Thank you. The Herbal Chef. Do these three words provide the panel with enough information to understand exactly what the appellant's business is all about? Or might the honors require just a little more factual information to make that leap? The briefs in this case... Well, I mean, that's an intriguing, but since you asked the question, I'll answer it. I mean, if he's a chef and a demonstrator of chefing, then yes to me. But if he's selling cookware, then it's sort of like Apple selling computers. No. If that's a fair answer, doesn't that explain what otherwise you're suggesting is incongruity between AFG and you? Well, I think there's some truth to what you're saying, Your Honor. So I think if we look at the goods and services provided by the appellant, and if we say and if we conclude by looking at the record that all the appellant is is a chef who cooks with herbs, I would agree with you. And I think that in that regard, perhaps the finding that the herbal chef is descriptive rather than suggestive would have some merit. However, I think if you look at the record, I think the goods and services that are connected to the appellant's business are broader than simply just somebody cooking with herbs. And I think certainly a trier of fact might ultimately come to that conclusion. But I think that a finding that the herbal chef is descriptive as a matter of law was improper. You're being you're appropriately being very careful, but you were in your brief, too. You did use the same word broader. I guess I'm going to ask you a few fact questions, though. No evidence in the record of sales of utensils or cookware. And to the extent connected to it was other people's brands. Disagree if I'm wrong. And what I really noticed on page 35 of your brief, you said, well, it's broader because, quote, it's reasonably within the natural zone of expansion. Remember that line? So it made me think that the district court may have been looking at record evidence that was just chef like. And as to products and goods, it's a little more unclear if you're selling. Your Honor, good question. I have two answers for that. OK, so with with regard, let me answer your first question, which I think is where you're getting. So with regard to products, I think the evidence in the record shows that Mr. Actually has sold infusers in the past. OK, I can see it. I agree with you that the actual confusion that's in the record. Remember, these are both cannabis companies. Right. So the record, the evidence in the record shows that there is actual confusion of people who bought the Apple's product and then showed up to a trade show and said to my client, hey, you know, why did you sell us this thing? Right. That type of thing. But our client, I will concede, primarily is a is a services brand, although they have sold infusers in the past. But I think even if you look at the services themselves, Judge, OK, there is certainly an issue of fact as to, you know, whether or not those services expand beyond simply a chef who cooks with herbs. Actually, if you look at the non-final, non-binding USPTO office action, even that decision, Judge, says that the two parties are working in sort of related areas, related goods and services. Right. So certainly there's at least a fact issue here. And I don't think we can honestly look at the record and derive from that record that all that Mr. Sayeg has ever done, you know, and he's been using this mark for more than five years now in commerce. I don't think we can say we're about five years. I don't think we can say that all he's ever done is a chef who cooks with herbs. This is a guy. Counsel, I'm not sure how that helps you, because to be descriptive, it doesn't have to describe absolutely everything you're doing. If I have a donut shop and I call it donut shop, that doesn't cease to be a descriptive mark just because I also sell coffee in the newspaper, does it? It could. It certainly depends what goods and services you're trying to seek protection over. Right. So if you're donut shop but you're selling computers, that's not descriptive. Right. That would be at least suggestive. Sure. I was imagining that the core business was donuts, but also you can buy coffee in the newspaper and stuff, right? Which seems to be fairly analogous to what's going on here, like he's a chef, which involves cooking and education about cooking. Those are all sort of bound up in what being a chef is, right? And a few ancillary things doesn't make that cease to be descriptive, does it? Well, Judge Miller, I think you're identifying the problem with deciding something like this. That's the judgment, right? I think it's a fact question when we start dancing further and further away from just selling donuts, right? Is it coffee? Is it pastries? Is it sandwiches? Is it a vegan restaurant, right? At what point is that line drawn? And I think as long as you're going beyond that core service in some way, it's a fact issue. And as everybody knows, typically, those of us that handle these cases, the likelihood of confusion analysis is one that is so fact intensive, highly fact intensive. Well, so is this prong, right? If you're trying to figure out whether a mark is descriptive or suggestive, and in doing so, you're having to dive in to the record and figure out what the goods and services are. So as I understood your briefing, your claim is that basically your client provides catering, dining services, cooking lessons, lectures and educational programs all about cooking and chefing with cannabis. Correct. That's his business. Correct. So taking that as true, why isn't that the donut shop example? I mean, where's the factual issue if we take your description of his chef services as being accurate? Yeah. I'm going to take Judge Higginson's and Judge Miller's, and now you're Judge Graber. Your questions, I think, are underscoring the problem here, right? If it is just a guy cooking with herbs, okay? I concede to Mr. Wilkerson and to the panel that that's probably descriptive, right? But when you've got these education components, he's an influencer. He's got this digital culinary platform where he's teaching people the benefits of plant-based cooking and cooking. So in the donut shop example, if I had a monthly class on Zoom teaching people how to make donuts at home during the pandemic, does that turn the donut shop name into something not descriptive? Because I'm now offering a class or a lecture on the benefits of fried goods? Yeah, absolutely. If you've got a weekly Zoom lesson on how to cook donuts, I think the donut shop is at bottom, at bottom, an issue of fact as to whether it's suggestive and is not descriptive as a matter of law. That would be my position on that, Your Honor. And so I think, you know, look, the briefs identify four issues in this case. But I think all of us, and I would guess, although I don't want to represent anything on Mr. Wilkerson's behalf, but I guess that everybody in this honorable courtroom could agree that it really is about one issue, right? Whether a reasonable juror could find that the appellant's trademark for the herbal chef is distinctive and deserving of trademark protection under federal law, right? Now, let's talk for a minute, okay, about how we make that determination, right? You've got to figure out if it's descriptive or is it suggestive? I think that the lower court spent a lot of time looking at what happened before the USPTO, okay? Well, counsel, I would say, I don't mean to be too argumentative with you here, but it appears to me that the district court looked at all the evidence in the record, looked at everything. That was one element, but I didn't see it being the decisive element. Well, I think that the district court did what, you know, I think sometimes happens, which, if you look at the opinion, it seemed to me, Judge, that the court was really fixed on an excerpt from the deposition transcript in which the appellant says, you know, I am the OG herbal chef, right? And I get it, and I see where the judge, why the judge would find that single statement persuasive. But I do think, respectfully, that the court ignored a litany of evidence that was also in the record, including in the USPTO's decision, by the way, about these two companies both trading in related areas, right? Let me just ask you a theoretical question. If we would agree that the herbal chef is merely descriptive, do we reach the question of the next question, which is whether these goods are related or similar, or is that the end of it? No, that's the end of it, Judge. So if you agree that there is no way that any reasonable juror could find this mark and all the goods and services attached to that mark, if you agree with the district court that there's no way that could ever be found to be suggestive, then yes, that ends the inquiry. We don't get to likelihood of confusion, which, by the way, as Judge Higginson, you were talking about the equities in the prior case. I mean, what an unfortunate result for somebody who's been using a trademark in commerce. He's the senior user, okay? That's not disputed. He's a senior user, two cannabis companies, can't get a trademark registration, so he does what people do, go to district court, and gets held up on summary judgment there without even a trial to dig into the factual record. And that's why I think this is... It is. I do think this case is a little unusual just because marijuana is illegal under federal law. You may or may not think that affects any of the issues in front of us. But if I remember, the denial of your mark registration was in part predicated upon that, whereas they're more collateral or ancillary. In other words, they aren't exactly selling something that is illegal under federal law, and so maybe that allowed their product to get registered, and then they can backdoor into infusers and things. Am I wrong that that's relevant at all here? It's a very good observation, Judge, and I think that was part of the USPTO's determination. I don't think that there's a sort of jurisdictional issue, if that's where your honor might be going here. I do think that... No, put that aside. Well, I did think in your brief... Yeah. In your brief, though, you were more emphatic that you saw a separate error on the district court's reliance on the examiner's observations. But in the brief, you only said he couldn't give heavy reliance or a high level of consideration. Is that just because it's obvious it would be a natural place to look and then construct questions for you and then independently come to a conclusion? I'm not sure I understand the question, Judge. Well, I think it's what Judge Graber was observing, which is this district court was just probing a lot, thoughtfully, all sources of information. But when he actually came to his conclusion, it was his own conclusion. And I didn't see your brief saying that the fact that he turns to what the examiner observed necessarily rendered his decision erroneous. You're not saying that? No, no, I'm not saying that, Judge. I actually think... I'll give you an example, right? He cooks all over the country. And in some jurisdictions, as I'm sure the panel is aware, cooking with cannabis is unlawful, right? So in many of those instances and even in others, he cooks with CBD and other ingredients, but he's really focused on this sort of plant-based health. And he addressed a lot of that when he gave that keynote at the National Restaurant Association conference last year or a couple of years ago. And so I think the problem, Judge Higginson, is that at the district court, I think that the court failed to recognize that there are things that he is doing outside of just the cooking with herbs. And so to answer your question as to why I think maybe the defendants were able to get their registration, I think the same should apply to Mr. Sayegh. I mean, he's not only a guy cooking with cannabis. He's doing a lot of other things. So I think that's another fact issue that needs to be hashed out at the district court. Counselor, you're down to one minute. Did you want to save rebuttal time? Yeah, if I could save that last minute, that would be great, Judge. You may do that. Thank you. And we'll hear from Mr. Wilkerson. You're still muted. I've got two mute buttons to handle here. I apologize. David Wilkerson on behalf of AFG Distribution. I appreciate the court hearing us today, especially in these trying times and taking time for this. I think the question from Judge Miller really is that when he used the example of the donut shop, and as a fan of Homer Simpson, I appreciate that example. There's actually been a registration that was denied for the herbal shop. And that shows you because this mark, that's what herbal does. It describes the word shop. It describes here the word chef. And this case falls within that continuum of generic to arbitrary. There's no denying that this mark, these two words, herbal and chef, and the, are all generic terms. The question is, if you put them together, does it make them more than merely descriptive? And this case, we submit, and the judge found that it falls squarely within like the case, the Filipino Yellow Pages case, where the court said, that term, this court said, it may be generic, but it also could be the feeblest of descriptive marks. And that's what this mark would be, is the feeblest of descriptive marks. Because what the appellant says that he does is he is a chef that cooks with herbs. Now, he says primarily cannabis or marijuana, but he also, in his deposition, which is in the record, testified, oh, I cook with other herbs, too. I cook with rosemary, thyme. And so the examples that we used in our brief really are on point here. Whether it's the... I guess my difficulty with this case, counsel, is put aside all the other cases. The difficulty here is the incongruity. In other words, if this exact mark is suggestive of your products, I guess it's the Lahoti case that I'm struggling with. Doesn't that give a presumption of validity that they would also be suggestive of his, unless the record is conclusive that he's in the services world and you're in the world of food processors and things that just don't come to your mind? Is that the only answer? That he gets no presumption of validity because you're selling something pretty radically different? Yes, but I think so. But I'd also like to address that issue because if you answer that question, which is in a lot of Ninth Circuit law about trademarks, what are you? If you ask that question of the herbal chef, you'd say, I'm the herbal chef. I'm a cook that cooks with herbs or I'm a chef that cooks with herbs. If you ask that question of our product, it's a baking dish. What are you? We are a baking dish. What are you? We are a trivet. We are a potholder. But you sell infusers. I mean, you are capitalizing on the cannabis interest. And I guess the question comes down to a summary judgment standard. Is there no record evidence that he, too, sold cookware, utensils, tools? Or is your answer the one in the briefs that there is that evidence, but it wasn't authenticated? Well, I don't think there is any evidence. And perhaps that comes down to an authentication question. We asked for sales data in this case. The judge noted that in his order. It was refused to give it to us. We wanted to know that data. I believe that there's, we have seen through the trademark filing in this case. And it may be something that the examiner pulled down from the webpage. That there were some high-end infusers. My client sells an infuser that actually works for cannabis and other things. And I want to be clear. My client is not just a cannabis company. That characterization has come through the briefs here. But my client sells, last time I was at their warehouse, they have over 9,000 SKUs. And many are unrelated to cannabis. So they sell a lot of items. They do have this one item, which is a butter infuser. Some people call it a butter infuser. So you can put any types of herbs in that butter, including cannabis. But when we go back to where the only view of an infuser came. It actually came, it's not in the herbal chef's submitted affidavit in summary judgment. It says nothing about selling goods in that affidavit. It's only when there's a, when the examiner pulled down a picture of the webpage for the herbal chef. You see that there are some very high-end infusers. My client's infusers cost $50. Theirs cost $3,000. They're not branded as the herbal chef. I don't know if they've ever sold any. And part of this question of authentication is, we don't know when those went for sale. We think they went for sale well after we were already selling our products in the marketplace. And just to let the court know the timeline here. This is actually a case where my client filed the first intent to use trademark application back in 2014. Extended it, let it lapse, and ended up finally getting their registration in February 2016. After selling products in January of 2016. Their first use anywhere was in the state of California in August of 2015. And then after that, I think there was one other state perhaps in December of 2015. And then all were after our clients. So there's no evidence that they were ever selling any of those goods until 2018. At least that they had offered for sale something. But the record is completely devoid of any evidence about what those sales were. And I think that's probably on purpose. I don't think they want to tell us. We don't know if they sold any of those goods. We just know that they've offered some infusers. And there's no evidence of anything about those sales. So Judge Sagan said, I don't know if that answers your question. But that's my attempt to... It largely does. So you accept the Lahoti and presumption of validity, even as the third party. But you're saying you're more like a Williamson Sonoma. You're just a big huge thing. And it's just in... Absolutely. Your Honor, the law says, and I quoted here from... A mark need not recite each feature of the relevant goods or services in detail to be descriptive. It only needs to describe a single feature or attribute. And that's from the in ready dial a mattress operating court case at the Federal Circuit. And a mark is descriptive... If a mark is descriptive of any of the services for which the registration is solved. My client does not provide food, catering services. We don't sell any type of food. We don't offer cooking services. And that, if we did, I would freely admit that our mark would be descriptive if we did that. Because it would be descriptive of what we do. We would be a chef that cooks with herbs. So back to Judge Miller's example. If something called the donut shop actually simply sold round pillows that look like donuts. And toys for dogs that look like donuts. But no actual donuts. It could register that name. I think they could. I mean, the trademark office has been... Before this hearing, I looked at... They've been entirely consistent with this. People have tried to register the herbal doctor. It's been denied. The herbal vet denied is merely descriptive. The herbal nurse denied is merely descriptive. And that's for this reason. I'm sure the herbal doctor or the herbal vet would also extol the values and the virtues of herbs. And the idea of a vet for your dog or for your cat. Just like the doctor would go on TV. The doctor might even have a TV show that talks about how great herbs are for your body. But that's not going to take it outside of being merely descriptive. Which is why the trademark office has consistently denied these types of marks. Even with the word herbal. Because it is completely descriptive of what the appellant is trying to do. What these other individuals are trying to do. Your honor, I do not think that there's any imagination here. And so this argument that the experience... If you see what the trademark examiner did. He looked at what Wolfgang Puck and what Emeril and what these celebrity chefs do. And he said that's what chefs do. They promote their type of cooking. Emeril I think promotes southern Louisiana cooking. Or at least that's what I understand. That's what they promote. And that's just the natural thing that anybody's going to do. Just like that herbal doctor would do. When we cite to the issue about the court looking at what the trademark office did. I think that the court did not look at it as... Give it any kind of weight as a prima facie case. The court just said I'm going to look at what the trademark office did here. And there's been... The appellant makes a big point about the fact that it was not a final determination. But actually generally the second office action in a trademark action is the final determination. And so the first determination was a rejection based upon a number of issues. As the court has pointed out. But one was that it was merely descriptive. At that point Mr. Dryarm had the opportunity and did. To file a lengthy 30 to 40 page response to the trademark examiner's decision. And the trademark office examined that. Read that. Reviewed it. Referenced it. And said that the rejection for being merely descriptive. It would be maintained. And because of that the only reason that office action was not in final. Was because this case had been filed. And in that same office action they said based upon this case being filed. This action would be suspended. Now the herbal chef would have had the opportunity to prove that there was secondary meaning. But there was no evidence of that. And I think in the reply brief they noted that they're not trying to argue. That there's secondary meaning in this case. And so the court doesn't need to go beyond the issue of being descriptive. Or being or whether it's whether or not the secondary meaning was along with that. There's no evidence of that. There's no evidence of advertising. There's no evidence of sale. There's no evidence of famous mark. And really this court has even said in the past. That even suggestive marks are presumptively weak. This would be the weakest of marks. Because there's been no evidence of any fame or sort for this. So Judge Higginson just trying to go back to that question about authentication. The issue of authentication. I'm not one to be a stickler for details such as that. Except for the fact that we were provided no information as to when those products. Or any of those documents were made available. And that was of course very important for the purposes of secondary meaning. Because you have to show secondary meaning prior to the first infringing use. And because our first infringing use was in January of 2016. The dates of those documents. If they're trying to prove fame became very important for my client. And so that we could rebut them, look at them, examine them. But we didn't have those. I think the final point I would make is that. The point earlier was that. That was made earlier in the case. And I don't think this was argued as much on appeal. Was whether or not the fact that it was marijuana made it suggestive. That because it was cannabis. There was some imaginative leap that took place between cannabis and an herb. And I think that is just flatly wrong. Cannabis is an herb. The trademark office, I think that's uncontested in the record here. That it is an herb. The trademark office has previously said that cannabis is an herb. Actually in a case in Ray Morgan. Which is serial number 863-629-68. Where they looked at another mark. Which was herbal access. And there became an issue about whether or not herbal captured marijuana. And the trademark office said absolutely it did. So I have two minutes left. I really want to answer any questions that the court might have. About any of the arguments or any of the questions about the sales. I do want to emphasize there is absolutely no evidence of any sales in the record. And of any products that were ever sold by the defendant. Without that, I will yield the rest of my time. Thank you counsel. Mr. Jyram, you have about a minute left. Yes, just a couple of really quick points. So, you know, one of the things that the Herbal Chef brand does. Is teach, you know, it's legions of like fans and followers on social media. How to cook, right? This is a brand that does that. So to say that the Herbal Chef is descriptive. Just doesn't make sense. Because there is a mental leap. If I say, oh, what's the Herbal Chef? You don't say to yourself, this is somebody who's putting on, you know. Cooking seminars and culinary seminars for large groups of people. It just doesn't. There's at least a fact issue there. Let's also talk about Lahoti for a second, right? Lahoti makes it very clear that when determining distinctiveness. You can look at highly similar marks that are on the registry. As Judge Higginson has pointed out. This is a highly unusual case. We have not only a highly similar mark. We have an identical mark. Not somewhere on the registry. But in this case. And this likelihood of confusion issue should be resolved. Thank you counsel. Thank you. The case just argued is submitted. And again, we appreciate very interesting and helpful arguments from both counsel. And with that, for this morning's session. We are adjourned. Thank you very much. Ms. Clarper, this session stands adjourned.
judges: Higginson, Graber, Miller